## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SOPHIA ZOURAS** | : | |
| **46 Orchard Lane** | : | **CIVIL ACTION** |
| **Berwyn, Pennsylvania 19312** | : | |
| | : | |
| **Plaintiff,** | : | **NO.** |
| | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **MICROSOFT CORPORATION** | : | **COMPLAINT** |
| **45 Liberty Boulevard** | : | |
| **Malvern, PA 19355** | : | |
| | : | |
| **Defendant.** | : | |

## NATURE OF THIS ACTION

1.      Sophia Zouras ("Ms. Zouras" or "Plaintiff") is an accomplished professional with a strong track record of leadership and success in the IT software and services industry over a period of decades.  Ms. Zouras earned a B.A. degree in American Studies with distinction honors and a B.S. degree in Communications and Journalism from Boston University in 1990.  In addition, Ms. Zouras earned a Master's Degree in 2004 from New York University in Industrial and Organizational Psychology, with an emphasis in research on leadership and teamwork.   She is a board member and volunteer for multiple non-profit organizations in her community.

2.      Ms. Zouras was employed by Defendant Microsoft Corporation ("Microsoft" or "Defendant") as a Sales Account Executive from May 21, 2018 until her unlawful termination on February 13, 2020.

3.      During her time at Microsoft, Ms. Zouras was a top performer in her job and through her energy and commitment to her executive sales pursuits and Microsoft's charitable endeavors, she brought impactful results to Microsoft's business which would have justified

1

advancement in her job.  Instead, Ms. Zouras was victim to toxic discriminatory practices and an illegal working environment which are endemic at Microsoft.

4.     During her employment, Ms. Zouras was subjected to gender bias, discrimination, harassment (including physical and verbal intimidation) and a hostile work environment that was perpetrated by her supervisor Cahba Kingwood (Sales Director), and supported by Pat Larkin (General Manager of Microsoft Services- Northeast Region), and is widespread within Microsoft. Mr. Kingwood specifically targeted Ms. Zouras as a female by artificially deflating her attainment and misrepresenting her achievements, depriving her of credit for business deals, deflecting business opportunities from her to other male employees and withholding earned compensation.

5.     When Ms. Zouras repeatedly reported up the chain of command about the gender bias, discrimination and harassment experienced by her and other female co-workers, Ms. Zouras was admonished by Mr. Kingwood to stop making her reports to HR and was subjected to further retaliation by Mr. Kingwood and Mr. Larkin, culminating in her unlawful termination on February 13, 2020.

6.     Microsoft's actions against Ms. Zouras give rise to the multiple legal causes of action, including for gender/sex discrimination, unlawful termination, maintenance of a hostile work environment, harassment and retaliation pursuant to federal and state civil rights laws, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, ("Title VII") and the Pennsylvania Human Relations Act, P.S. Sections 951 *et seq.* ("PHRA"), and a common law cause of action for intentional infliction of emotional distress.

2

## PARTIES

7.      Plaintiff Sophia Zouras is an adult female who resides at 46 Orchard Lane, Berwyn, Pennsylvania 19312.  Ms. Zouras was continuously employed by the Microsoft Corporation at the Malvern, Pennsylvania office from May of 2018 until the date of her unlawful firing.

8.      Defendant Microsoft Corporation is one of the largest multi-national technology companies in the world with over 160,000 employees throughout the globe.  Microsoft is incorporated under the laws of the State of Washington, is headquartered at One Microsoft Way in Redmond, Washington and has an office located within the Eastern District of Pennsylvania at 45 Liberty Boulevard in Malvern, Pennsylvania.  Microsoft is an employer as defined by Title VII and the Pennsylvania Human Relations Act.

9.      At all relevant times hereto, Microsoft acted by and through its duly authorized actual and/or apparent agents and employees, including but not limited to Cahba Kingwood, Pat Larkin and the other Microsoft employees mentioned in this Complaint, acting within the course and scope of their actual and/or apparent agency and employment.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over Plaintiff's claims for relief under 28 U.S.C. §§1331, 1332, and 1343 since those claims are based in part on violations of and arise under the laws of the United States, including Title VII, and there is diversity of citizenship between the parties.

11.      Jurisdiction is also invoked pursuant to 28 U.S.C. §1367, granting this Court supplemental or pendent jurisdiction over the state law claims asserted under the common law and statutes of the Commonwealth of Pennsylvania, including the Pennsylvania Human

Relations Act, 43 P.S. Sections 951 *et seq.*, because the state claims and federal claims are so interrelated that they are the same case or controversy under Article III of the United States Constitution.

12.     Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. §1391 since Plaintiff resides in the Eastern District of Pennsylvania, Defendant resides in the Eastern District of Pennsylvania and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Eastern District of Pennsylvania.

## FULFILLMENT OF TITLE VII CONDITIONS

13.     Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII.  Charges were filed with the Equal Employment Opportunity Commission ("EEOC") and simultaneously dual-filed with the Pennsylvania Human Relations Commission. Following Ms. Zouras' termination, a "Right to Sue" letter was issued by the EEOC to Ms. Zouras on August 4, 2020.  Plaintiff is filing suit within ninety (90) days of receipt of the "Right to Sue" letter.

## FACTS PERTAINING TO PLAINTIFF'S LEGAL CLAIMS

14.     Beginning in April of 2018, Ms. Zouras was recruited by Microsoft for the role of Sales Account Executive.

15.     Following a series of interviews, Ms. Zouras was hired to a Sales Account Executive position based out of Microsoft's office in Malvern, Pennsylvania, reporting to the Director of Sales, Mr. Cahba Kingwood ("Mr. Kingwood").

16.     Shortly after joining Microsoft, Ms. Zouras attended orientations and training programs in Malvern, PA, Dallas, TX and Las Vegas, NV.

17. During the training in Las Vegas, Ms. Zouras noticed that her manager, Mr. Kingwood, was indifferent toward her and preferred the male team members over her.

18. During the second half of 2018, it became clear to Ms. Zouras that Mr. Kingwood's preference for the male employees that she noticed in Las Vegas was not merely an aberration but was characteristic of a larger problem of discrimination against female employees. This included Mr. Kingwood's assignment of the more valuable, lucrative accounts to the male employees; greater sales support, assistance and a stronger platform for the male employees as compared to the female employees; greater personal attention for the male employees as compared to the female employees; and undue and unfair criticism of female employees as compared to the male employees.

19. In January of 2019, during the Quarterly Business Review ("QBR") meeting with the Sales Account Executives, Ms. Zouras observed that she and another female employee ("DW") were treated by Mr. Kingwood and General Manager Mike Hurt in a dismissive manner by being "cut-off" in their Quota Retirement Plan ("QRP") presentations, giving preference to the male presenters, and unduly criticizing Ms. Zouras and DW in front of the group.  As Ms. Zouras was giving her presentation, she was abruptly halted and told that she was taking up another male employee's presentation time.  The mistreatment of Ms. Zouras and DW was so obvious and inappropriate that another female senior manager expressed to Ms. Zouras that she noticed the unequal treatment of the Ms. Zouras and DW as compared to the men.

20. In February of 2019, Sophia Zouras reported to Microsoft human resources representative Pam Londer about the mistreatment of her and DW by Mr. Kingwood and Mr. Hurt at the QRP presentations.  Ms. Zouras also reported to Ms. Londer about the frequent "guy

talk" that she was exposed to at work and that Mr. Kingwood inappropriately commented to her that she should "hear feedback from a woman."

21.    In response to Ms. Zouras' report, Ms. Londer encouraged Ms. Zouras to express such concerns to HR and advised Ms. Zouras that she should tell Mr. Kingwood when she perceives comments to be inappropriate or make her uncomfortable.  Thereafter, Ms. Zouras' heeded Ms. Londer's advise to speak up to Mr. Kingwood, which only resulted in further dismissiveness and mistreatment of Ms. Zouras by Mr. Kingwood.

22.    In March of 2019, after Ms. Zouras led the pursuit of a large account deal for Microsoft with one of the largest chemical companies in the world, Mr. Kingwood and Mr. Hurt refused to acknowledge or credit Ms. Zouras for her role in creating and selling the deal.  Despite her communications to Mr. Kingwood and Mr. Hurt over a period of months in which she sought to obtain the deal credits that she had rightfully earned, they purposely deprived her of her deal credits which artificially deflated her attainment and bonus compensation for fiscal year 2019.

23.    Beginning in March of 2019, after Mr. Kingwood received an unfavorable management review based on an anonymous poll of all members of his sales team, he specifically targeted and blamed Ms. Zouras and DW for his unfavorable review, calling them out by name in a threatening manner on a team sales call with other sales team members.

24.    In March of 2019, hundreds of female employees of Microsoft began sharing their experiences of gender bias, harassment and discrimination in an online forum which was circulated widely within Microsoft.  The reported incidents included, among others: threats of violence against a female employee if she did not perform a sexual act; a woman being asked to sit on man's lap twice during a business meeting at which HR and other executives were present without the objection of anyone else in the room; and multiple reports of female employees

being called a "bitch" at work.  Common complaints posted on the online forum related to female employees being obstructed in advancement and promotion within the company and the bias and disparate treatment that is alleged to accompany female employees being labeled as "diversity hires."

25.     Also in March of 2019, at Microsoft's Women's Leadership Conference in New York City, dozens of women publicly revealed and discussed their experiences of gender bias, discrimination and harassment at Microsoft.

26.     On March 29, 2019, in response to the hundreds of complaints that were shared online by female Microsoft employees, Microsoft's Chief People Officer Kathleen Hogan ("Ms. Hogan") stated that she discussed the complaints with Microsoft CEO Satya Nadella.  Ms. Hogan responded that "we are appalled and sad to hear about these experiences" and "it is very painful to hear these stories and to know that anyone is facing such behavior at Microsoft." Ms. Hogan acknowledged that "we must do better" and invited female employees facing harassment and discrimination to "email me directly."  Ms. Hogan promised that: "I will personally look into the situation with my team.  I understand the devastating impact of such experiences, and [CEO Nadella] wants to be made aware of any such behavior, and we will do everything we can to stop it."

27.     On April 4, 2019, Microsoft CEO Satya Nadella was confronted about the complaints of gender discrimination during his monthly "All Hands" meeting with Microsoft employees.  In response, Mr. Nadella expressed that he would commit to putting more resources into investigations of gender discrimination and assured employees that there would be no retaliation for voicing their concerns.  With respect to Ms. Zouras, this proved to be an empty promise by Microsoft's CEO.

28.     After learning of the hundreds of complaints of gender bias, discrimination and harassment on the online forum, and Ms. Hogan's and Mr. Nadella's response to those complaints, Ms. Zouras understood that the discrimination and mistreatment that she was experiencing was not isolated, but was part of a widespread and endemic problem infecting Microsoft.

29.     Unfortunately, although a spotlight was being shined on the gender bias, discrimination and harassment for highest level Microsoft executives to see, this did not deter Mr. Kingwood from his continued efforts to undermine and unduly criticize Ms. Zouras and her female colleague DW, who he unrelentingly treated in an abusive and abrasive manner.

30.     In April of 2019, Tobias Kammer, an investigator with Microsoft's Employee Relations and Investigations Team (ERIT), contacted Ms. Zouras as a potential witness to complaints made by other female employees of gender discrimination by Mr. Hurt.  In response to Mr. Kammer's request for information, Ms. Zouras told Mr. Kammer that she had experienced dismissive treatment by Mr. Hurt at her QBR presentation and that she was not given her rightful credit by Mr. Hurt for her role in leading and closing a major deal in March of 2019.

31.     On April 11, 2019, May 1, 2019, May 17, 2019 and June 18, 2019, Ms. Zouras reported to HR manager Sally Barth her many ongoing concerns about Mr. Kingwood's unfair, dismissive and abusive treatment, including his refusal to give her an appropriate biannual Microsoft Connect review, depriving her of deal credits that she rightfully earned with respect to two large accounts while unfairly crediting male team members instead, and inequitable treatment of Ms. Zouras and DW as compared to the male sales team members.  Additionally, Ms. Zouras expressed her concern to Ms. Barth that Mr. Kingwood would retaliate against her as a consequence of reporting about Mr. Kingwood's mistreatment of her.

32.     In response to Ms. Zouras' reports, Ms. Barth advised Ms. Zouras that she should file a complaint with ERIT.

33.     In June and July of 2019, Ms. Zouras continued to communicate with Mr. Kingwood about his refusal to credit her with the sales of two large accounts for which she was responsible, which if not corrected would artificially deflate her attainment and have a severe adverse impact on her bonus compensation for that fiscal year.  In response, Mr. Kingwood insisted, without explanation, that he could not make the correction regarding her deal credits, and in an adversarial and threatening manner, suggested that she "get another job."

34.     In or around June of 2019 and multiple times thereafter, Mr. Kingwood admonished Ms. Zouras to stop communicating with HR about the discrimination and mistreatment that she was experiencing.

35.     On July 26, 2019, Ms. Zouras reported to Ms. Barth that she was "very concerned and upset" that she was being "disparately treated" by Mr. Kingwood with respect to her deal credits, since Mr. Kingwood was assigning credit on her two large accounts only to a male member of the sales team.  Ms. Zouras told Ms. Barth that when she raised this issue again with Mr. Kingwood by phone on July 25th, he raised his voice, was dismissive of her concerns, and abruptly ended the phone call.  "I am not satisfied that my manager is advocating for me equally," Ms. Zouras told Ms. Barth.

36.     In July and August of 2019, Mr. Kingwood continued his efforts to marginalize Ms. Zouras and refused to provide the same level of support for her sales efforts as he did for the male sales team members.  Significantly, without any prior notice or consultation, Mr. Kingwood reassigned Ms. Zouras from her established sales territory where she had worked hard to establish a pipeline of business to a new territory where she would have to start over.  In turn,

9

Mr. Kingwood moved Ms. Zouras' developed pipeline of business to her male counterparts. This move against Ms. Zouras by Mr. Kingwood was in furtherance of his efforts to spoil her prospects for job growth and in retaliation for the reports of discrimination that she made to HR.

37.     On August 12, 2019, Tobias Kammer, the same investigator with ERIT who had previously contacted Ms. Zouras about the complaints by other female employees of gender discrimination by Mr. Hurt, contacted Ms. Zouras to advise that he was assigned to investigate her reports of discrimination, harassment and mistreatment by Mr. Kingwood.

38.     On August 14, 2019, Ms. Zouras learned that she would receive only a nominal and unusually low bonus that was counter to her performance and productivity for Microsoft over the prior twelve months.  When Ms. Zouras confronted Mr. Kingwood about the unfair bonus, Mr. Kingwood offered no explanation and told Ms. Zouras that "if you don't like it, you can leave."  Mr. Kingwood consistently treated Ms. Zouras in an effort to push her out of the job and get her to quit.

39.     In September of 2019, Ms. Zouras made her QRP presentation at the QBR meeting to an audience of approximately forty Microsoft sales professionals in New York City. Although her presentation was well received by her peers and other managers, Mr. Kingwood undermined her by interrupting her presentation and asking another male manager to complete part of Ms. Zouras' presentation.  Mr. Kingwood refused to communicate with Ms. Zouras and DW during the entire two-day meeting and purposely excluded Ms. Zouras and DW from sales teams' extracurricular activities, including a photo of the sales team that Mr. Kingwood posted online.  At the meeting, multiple female employees who observed Mr. Kingwood's patriarchal behavior toward Ms. Zouras offered their support and noted that they had observed Mr. Kingwood treat other women this way as well.  This same pattern of discriminatory behavior by

Mr. Kingwood of ignoring and excluding the female members of his sales team was repeated at the Microsoft sales meeting in Las Vegas the following week, and was reported to Ms. Barth by Ms. Zouras on September 24, 2019.

40.      After many months of pushing for the deal credits that she was rightfully owed, Ms. Zouras escalated the issue to Vice President Jim Lee who acknowledged the problem and advocated for Ms. Zouras to receive the deal credits she deserved with respect to the two large accounts.  As a result, Ms. Zouras was paid some commission for generating those two large accounts on September 13, 2019, but her overall quota attainment was never corrected.

41.      Through September and October of 2019, despite the horrific conditions she was operating in, Ms. Zouras was a leader in pursuing new accounts and had successfully developed a multi-million dollar pipeline of new business.  During this time, Mr. Kingwood schemed to undermine confidence in Ms. Zouras by falsely asserting to other sales team members that she is not managing or in control of her own deals and excluding Ms. Zouras from managing her deals while deferring to other male employees.

42.      On October 18, 2019, the hostile, harassing and discriminatory behavior by Mr. Kingwood rose to a crescendo.

43.      On a phone call with Mr. Kingwood on October 18th, in response to Ms. Zouras' request for sales support with a prospective large account that she had been pursing for many months and on-site over the previous week, Mr. Kingwood launched a tirade against Ms. Zouras, yelling: "I am no longer going to help you or advocate for you."  In a threatening and bullying manner, Mr. Kingwood told Ms. Zouras that he would not permit her to meet with her customer on October 21st and said that he would be attending the meeting in her place, despite the fact that

Ms. Zouras had been pursuing this deal for many months and had been on-site with the client over the previous week.

44.     Following the phone call, on October 18th, Mr. Kingwood sent an email to Ms. Zouras with a copy to General Manager Pat Larkin in an effort to marginalize Ms. Zouras by fabricating lies and creating a false narrative.  In a stroke to outrageous irony, Mr. Kingwood falsely accused Ms. Zouras of "abusive" behaviors toward him and threatened that her "job is in jeopardy."  Ms. Zouras responded to Mr. Kingwood, with copy to Mr. Larkin and Ms. Barth, asserting that he was misrepresenting the facts in an effort to threaten and intimidate her in retaliation for her reports about Mr. Kingwood to HR, and requested a conference with Mr. Larkin and Ms. Barth.  Ms. Zouras indicated that: "I do not accept your explanation or narrative of today's meeting 1:1 nor ongoing related to my work as it lacks full context and data but I am reflecting all the same.  In addition I can only view this surprising email as an ongoing concern I have expressed and documented regarding this kind of retaliation from you for my bringing attention to bias, discrimination and favoritism in the hostile environment."

45.     Ultimately, Mr. Larkin enabled Mr. Kingwood's aggression and told Ms. Zouras that she would be permitted to participate in the meeting with her customer on October 21st but only if Mr. Kingwood attended with her.

46.     By separate email to ERIT investigator Mr. Kammer on October 18th, Ms. Zouras informed the investigator that: "I am pained to advise you today I am being retaliated against by my manager Cahba Kingwood who created a false narrative today victimizing me"… "My manager has been ignoring me, leaving me out of job role tasks, excluding me from team activities.  He told me this morning that he will not help me in the company, albeit I am a fairly new employee.  I calmly and firmly confronted my manager with his retaliation, bullying, bias,

favoritism and discrimination towards me for months.  I asked my manager to please not threaten or intimidate me."  After outlining her communications that day with Mr. Kingwood, Ms. Barth and Mr. Larkin, Ms. Zouras voiced her concern that: "I am now forced to endure my manager coming to join me on my most high profile account on Monday Oct 21, in which he has never attended, and am afraid he seeks to undermine me with no resolution on the hostile environment, retaliation and his egregious attempt to libel and slander me in retaliation."

47.     By separate email to Ms. Barth on October 20th, Ms. Zouras reported about Mr. Kingwood's false statements and threatening, demeaning and intimidating behaviors and that "I am living in an increasingly hostile work environment and strongly believe I am undermined in my business role and chances to achieve effectiveness."

48.     On October 21, 2019, both immediately before and during the meeting in Allentown, Pennsylvania with the customer account for which Ms. Zouras was responsible for developing, Mr. Kingwood ignored and excluded Ms. Zouras in an effort to sideline her from her own sales efforts.  On a conference call prior to the sales meeting with other male colleagues, Mr. Kingwood ignored Ms. Zouras and said that he needed "the guys" to bring him up to speed on the account since he was "coming in cold."  Incredibly, during the sales meeting in front of the customer's executives, Mr. Kingwood acted in a physically and verbally aggressive manner toward Ms. Zouras by staring her down while telling the customer that Ms. Zouras would be stepping back from her sales role.  In response to this act of near sabotage of the sales deal, the customer's executives were confused and left in an awkward position.  At the conclusion of the presentation, Mr. Kingwood stood over Ms. Zouras in a physically aggressive manner and informed her that she was not permitted to stay at the meeting with the customer.  Ms. Zouras reported about this incident to Mr. Larkin, Ms. Barth and Mr. Kammer and pleaded that

Microsoft "take this very seriously" and help reach a resolution to Mr. Kingwood's behavior toward her.

49.    On October 22, 2019, Mr. Larkin told Ms. Zouras, without knowledge of all the facts, that he was standing by Mr. Kingwood and dismissively said that there is "no way this is gender bias and discrimination." Just as Mr. Kingwood had done before him, Mr. Larkin told Ms. Zouras that she should stop reporting gender bias and discrimination by Mr. Kingwood and there "isn't any gender bias or discrimination here."

50.    On November 5, 2019, Ms. Zouras reported to Ms. Barth and HR director Sheila Stephens about Mr. Kingwood's "increasing inappropriate manager behaviors, his inappropriate comments, gender bias, favoritism, non inclusiveness and discrimination as well as recent threatening retaliation…" and indicated that "I do not feel safe." Ms. Zouras requested that she be transferred to a different sales manager so she could be liberated from the hostile work environment propagated by Mr. Kingwood.

51.    During this same period, Ms. Zouras' female colleague, DW, was reporting to Sally Barth and Sheila Stephens about similar "harassment, intimidation, misrepresentation of facts and retaliation [by Mr. Kingwood] that [DW has] been alerting to Human Resources and our senior leadership team for almost a year." DW reported that Mr. Kingwood's behavior was "deeply concerning and emotionally disturbing" and his "increased aggressive stance" toward her "makes me extremely uncomfortable." In support of her own request to be transferred to a new manager, DW told Ms. Barth and Ms. Stephens that "I no longer feel safe being in any situations alone with Cahba [Kingwood]."

52.    Shortly thereafter, DW's request for a transfer was honored and she was transferred to work under sales manager Stephanie Mosticchio in New York. Despite

acknowledgments that there was a problem with Mr. Kingwood's inappropriate behavior,

Microsoft refused to grant the same consideration to Ms. Zouras.

53.     On November 15, 2019, Ms. Zouras emailed Ms. Stephens seeking her assistance

with her ongoing problems with Mr. Kingwood and again requesting a transfer to a new

manager, as follows:

> Sheila,
> I must speak with you related to the ongoing hostile environment,
> retaliation that I am experiencing under my manager Cahba Kingwood. I formally
> asked you before Sally Barth in HR moved to another position recently and as you
> are now my point of contact, to be moved from being managed by this manager
> Cahba Kingwood to possibly be managed by Stephanie Mosticchio the peer
> manager for our Northeast Services team.
> I am reporting continually, extensive numerous occasions of Cahba
> Kingwood negatively attacking and targeting me, mischaracterizing interactions
> as he did on Oct 4, 7, 18, 21 in communications, falsifying activities and
> reporting, and his inappropriate non inclusive, aggressive, passive aggressive and
> exclusionary behaviors. This is very disturbing, traumatic and an ongoing hostile
> environment.
> You had offered last that you would be in touch this week from over a
> week ago. I have not heard from you and it is Friday Nov 15.
> I am at a loss what you would have me do in this situation while pursuing
> multi million dollars of deals and not being supported by my manager, being
> retaliated against, being dismissed, being excluded, not being appreciated, being
> discriminated against, being undermined, being devalued or not respected as a
> professional due to in my view his orchestration of this campaign.
> Please provide your guidance and support. Thank you.
> Regards,
> Sophia

54.     On November 26, 2019, the ERIT investigator Mr. Kammer informed Ms. Zouras

that based on his "investigation," during which he failed to speak with or interview certain

essential witnesses named by Ms. Zouras, he found no gender bias or discrimination against her.

Additionally, Ms. Zouras was advised that Microsoft would not honor her request for a transfer

to a new manager and that it would be "business as usual."  Ms. Zouras requested additional

attention to the ongoing problems with Mr. Kingwood but none was provided.

55.     From October of 2019 through February of 2020, Mr. Kingwood continued and intensified his harassment, discrimination, hostility and retaliation against Ms. Zouras.  As Mr. Kingwood sought to undermine Ms. Zouras by fabricating a false narrative that portrayed her as incompetent and not managing her accounts, Ms. Zouras was the top performer on her sales team.

56.     On a telephone call on December 5, 2019, Mr. Kingwood again admonished Ms. Zouras to stop reporting to HR.  HR Representative Jose Paz Castro, who was also on the call at Ms. Zouras' request, reassured Ms. Zouras that she should keep reporting any problems and advised Mr. Kingwood that his instruction was not appropriate.

57.     On December 13, 2019, in follow-up to their earlier telephone call on December 3rd, Ms. Zouras appealed to Senior Director of Global Employee Relations Ande Ferretti for help and reported about the ongoing harassment and discrimination against her by Mr. Kingwood.  In response to Kathleen Hogan's invitation in March of 2019 the women of Microsoft and her pledge to "personally look into the situation with my team," Ms. Zouras desperately reached out to her for help.  Although Ms. Hogan ignored Ms. Zouras' plea to discuss with her the ongoing problems with Mr. Kingwood, Ms. Hogan referred Ms. Zouras to communicate with Ms. Ferretti instead.

58.     When Ms. Zouras suffered an injury to her back that necessitated surgery, she requested and was granted an accommodation to work remotely from February 6 through February 21, 2020.  During the period that she was expressly permitted by Microsoft to work remotely, consistent with his pattern of bias, discrimination and harassment, Mr. Kingwood seized the opportunity again to berate and belittle Ms. Zouras and her job skills due to her inability to be physically present at work.

59.     On February 13, 2020, Ms. Zouras participated on a conference call via Microsoft Teams that she expected to be her biannual Microsoft Connect review with Mr. Kingwood.

60.     In advance of the February 13, 2020 call with Mr. Kingwood, Ms. Zouras made her Connect submission to Microsoft on February 1, 2020.  Mr. Kingwood did not submit any review for Ms. Zouras, as is customary and required of managers with respect to conducting employee Connect reviews.

61.     The February 13, 2020 conference call was attended by Ms. Zouras, Mr. Kingwood and Erin Roy, a representative of the human resources department of Microsoft.  At the commencement of the call, Mr. Kingwood advised Ms. Zouras he decided to terminate her employment with Microsoft "effective today" due to "performance issues."

62.     Notwithstanding Mr. Kingwood's assertion that he was terminating Ms. Zouras based on "performance issues," Ms. Zouras' record of achievement was exemplary and at no time prior to her termination were complaints made about Ms. Zouras to Microsoft HR, nor was she subject to any discipline.

63.     As of February 13, 2020, despite the roadblocks that Mr. Kingwood consistently threw her way, Ms. Zouras had achieved over 112% weighted attainment for the fiscal year and was on track to be the top performer in her sales group for the year.

64.     Earlier that same day, Ms. Zouras completed a lucrative, multi-million dollar contract that she had orchestrated on her own.  Prior to completion, Mr. Larkin and Mr. Kingwood delayed the completion of that sales agreement until Ms. Zouras' termination, so that Ms. Zouras would not receive her due credit and compensation.

65.     Mr. Kingwood terminated Ms. Zouras only one day before she was scheduled to receive her quarterly commission payment.

66.    Mr. Kingwood's stated reason for her termination was in furtherance of his false narrative against Ms. Zouras and an effort to rid his team of a female employee with a strong record of achievement.

67.    Multiple other female employees have complained of discrimination and harassment by Mr. Kingwood before and after Ms. Zouras' termination, including complaints of disparate treatment among men and women, inappropriate physical touching, sexual harassment, demeaning comments towards women, and other incidents of lewdness and intoxication at a sales meeting.

68.    Although Ms. Zouras' complaints about Mr. Kingwood fell on deaf ears, perhaps not surprisingly, shortly after Mr. Kingwood fired Ms. Zouras, Microsoft terminated Mr. Kingwood's employment as well.

69.    Ms. Zouras is entitled to damages which compensate her for her total economic loss, including back pay, front pay, and lost benefits, as well as damages due to the harm to her reputation and emotional and psychological harm arising from her unlawful termination, as well as her endurance of a hostile, discriminatory work environment during her employment at Microsoft. Additionally, Ms. Zouras is entitled to attorney fees, costs, and punitive damages due to Respondent's outrageous conduct.

## COUNT I

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000e *et seq.***
**SEX DISCRIMINATION, HARASSMENT, MAINTENANCE OF A HOSTILE WORK ENVIRONMENT and RETALIATION**

### Sophia Zouras v. Microsoft Corporation

70.    Plaintiff restates and realleges each of the previous paragraphs as though set forth here in full.

18

71.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, *et seq.* as amended by the Civil Rights Act of 1991 ("Title VII), makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of sex.

72.     Discrimination on the basis of sex that creates an abusive and hostile work environment, such that the conditions of employment are altered, is actionable under Title VII as sex discrimination. In order to establish a hostile work environment, five factual elements must be established: (1) that the employee suffered intentional discrimination because of his or her sex; (2) that the discrimination detrimentally affected him or her; (3) that the discrimination was pervasive and regular; (4) that the discrimination would detrimentally affect a reasonable person in the same position as the employee; and (5) that respondeat superior liability exists. In the totality of circumstances described in the facts set forth hereinbefore, the foregoing five elements are established.

73.     Defendant retaliated against Plaintiff as a result of her complaints of discriminatory treatment, harassment and a hostile work environment.

74.     Defendant is liable for discrimination alleged herein under the doctrine of *respondeat superior* due to the actions and statements of its managers and employees.

75.     Defendant is liable for the acts of management and Plaintiff's co-workers, because Defendant knew of the existence of a discriminatory and a hostile work environment, but allowed the illegal acts and practices to continue and took no corrective action.

76.     Defendant is liable for the acts alleged herein because of its culture of encouraging a hostile work environment, sexual discrimination, harassment and retaliation.

77.     Based upon the foregoing facts, Defendant has discriminated against Plaintiff on the basis of her sex and retaliated against her for standing up for herself and other females, in

deprivation of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et. seq. as amended.*

78.     Defendant unlawfully retaliated against Plaintiff as a result of her standing up for herself and other females by reporting about Defendant's unlawful conduct.

79.      The described unlawful employment practices by Defendant were intentional, deliberate, and willful and were with malice or reckless indifference to Plaintiff's rights protected by the laws of the United States, as well as the laws of the Commonwealth of Pennsylvania.

80.     By reason of Defendant's discrimination, harassment, maintenance of a hostile work environment and retaliation, Plaintiff is entitled to all legal and equitable remedies available.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant Microsoft Corporation and requests an award of relief including, but not limited to compensatory damages, including any and all recoverable economic and noneconomic loss, punitive damages, reasonable attorneys' fees and costs, and other relief as permitted under the law and as this Court deems just and proper.

### COUNT II

**VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT
SEX DISCRIMINATION IN EMPLOYMENT, HARASSMENT, CREATING A
HOSTILE WORK ENVIRONMENT AND RETALIATION**

**Sophia Zouras v. Microsoft Corporation**

81.     Plaintiff restates and realleges each of the previous paragraphs as though set forth here in full.

82.     This claim arises under the Pennsylvania Human Relations Act ("PHRA"). The Pennsylvania Human Relations Act, 43 P.S. § 955 *et seq.*, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of sex.

83.     Based upon the foregoing facts, Defendant has discriminated against Plaintiff on the basis of her sex and has deprived her of her rights in violation of the Pennsylvania Human Relations Act, 43 P.S. § 955 *et. seq.*

84.     The effect of the aforementioned conduct, including harassment, maintenance of a hostile work environment, retaliation and discrimination, culminating in her unlawful firing, has been to deprive Plaintiff of equal employment opportunities and adversely affect her status as an employee because of her sex.

85.     By reason of Defendant's harassment, maintenance of a hostile work environment, retaliation and discrimination, culminating in her unlawful firing, Plaintiff is entitled to all legal and equitable remedies available.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant Microsoft Corporation and requests an award of relief including, but not limited to compensatory damages, including any and all recoverable economic and noneconomic loss, punitive damages, reasonable attorneys' fees and costs, and other relief as permitted under the law and as this Court deems just and proper.

## COUNT III

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### Sophia Zouras v. Microsoft Corporation

86.     Plaintiff restates and realleges each of the previous paragraphs as though set forth here in full.

87. Defendant acted recklessly or intentionally by discriminating and retaliating against Plaintiff.

88. Defendant's conduct exhibited toward Plaintiff was extreme and outrageous.

89. As a direct and proximate result of the extreme and outrageous conduct of Defendant as set forth above, Plaintiff has suffered severe emotional distress.

90. The extreme and outrageous conduct of Defendant, as set forth above, which was committed with a reckless indifference to the rights of Plaintiff, warrant the imposition of punitive damages.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant and requests an award of damages including, but not limited to compensatory damages, punitive damages, reasonable attorneys' fees and costs, and other relief as this court deems appropriate.

## **JURY DEMAND**

The Plaintiff demands trial by jury of all issues triable of right to a jury.

## **CERTIFICATION**

I hereby certify that the Plaintiff has not brought a similar or related lawsuit encompassing the claims brought in this matter.

Respectfully Submitted,

**THE PEARLMAN LAW FIRM, PLLC**

By: _____/s/ Jason L. Pearlman_____
Jason L. Pearlman, Esquire (Pa ID #93879)
Two Bala Plaza, Suite 300
Bala Cynwyd, PA 19004
610-660-7793
jpearlman@pearlmanlawfirm.com

DATED: __October 30, 2020___          *Attorney for Plaintiff Sophia Zouras*

## <u>VERIFICATION</u>

I, Sophia Zouras, do hereby certify that I am the Plaintiff in the within action, and that the

facts contained in the foregoing Complaint are true and correct to the best of my knowledge,

information and belief.  I do further understand that these statements are made subject to the

penalties of 18 Pa.C.S. § 4904, relating to unsworn falsifications to authorities.

Sophia Zouras

Dated: Oct 29, 2020